AUGUSTINE, Judge.
Plaintiff, Frances May Bua LoCoco, filed suit against her husband, Dr. Santo Joseph LoCoco, for separation a mensa et thoro, alleging both abandonment and cruelty under Art. 138 of the Louisiana Civil Code. The defendant denied plaintiff’s allegations and reconvened, alleging abandonment and cruelty on the part of his wife.
After a lengthy trial, the court ordered the separation sought by each of the parties, based on a finding of mutual fault.
The plaintiff now pursues this appeal, claiming error in the trial court’s finding of fault on her part. Alternatively, she argues that the trial court erred in not dismissing the case in its entirety, due to failure of each party to prove fault on the part of the other.
The first question before this Court, therefore, is whether the evidence adduced at trial supports either of the defendant spouse’s reconventional claims of abandonment and cruelty on the part of his wife.
The party seeking a legal separation on the basis of abandonment must prove the elements thereof. Although our Civil Code does not in terms define “constructive abandonment” among grounds for separation under Art. 138, considerable jurisprudence has developed which recognized “constructive abandonment” as occurring whenever one spouse, without just cause, orders the other to leave the matrimonial domicile. *460 The rejected party is said to be “constructively” abandoned even though the offending spouse remains in the matrimonial domicile. Burnett v. Burnett, 349 So.2d 488 (La.App. 3rd Cir. 1977). The critical factor in “constructive abandonment” cases is the rejected spouse’s good faith effort to return and live with the other spouse. Robertson v. Robertson, 332 So.2d 896 (La.App. 2nd Cir. 1976).
Because the peculiar facts of this case also entail abandonment in the more commonly understood sense, we need only note that Article 143 of the Civil Code requires proof of the following elements to constitute abandonment: withdrawal of the spouse from the common dwelling; without lawful cause; with the constant refusal to return to live with the other. Von Beehman v. Von Bechman, 386 So.2d 910 (La.1980).
Although the trial testimony is in conflict on several points, we find that the credible testimony established the following facts:
Dr. and Mrs. LoCoco had been married for nearly twenty-five years as of the time of their physical separation on July 23, 1979.
For approximately a week and a half prior to that date, Mrs. LoCoco had refused to engage in sexual relations with her husband, preferring instead to sleep in her youngest son’s bedroom. During this period, there was some argument between the two over this new arrangement, but no more than can be reasonably expected to flow from such a dispute.
In the early hours of July 23, 1979, after returning from what was hoped to be a reconciliatory outing together, Mrs. LoCoco calmly informed her husband that she no longer loved him, and that she no longer wanted to be married. At first, she ordered him to leave the residence immediately, but then consented to allow him to remain but only for the night. As before, Mrs. LoCoco again slept in the youngest son’s bedroom and locked the door. There was no reconciliation that night.
The next morning, Dr. LoCoco packed a small bag with a few belongings and moved to the Fat City Motel, where he stayed for about a week.
He returned to the matrimonial domicile on August 1, 1979, to find his wife and children gone; they had already moved to Mrs. LoCoco’s mother’s house a number of days earlier.
Suspecting that Mrs. LoCoco might be at her brother’s house, Dr. LoCoco called and spoke with him. His wife and children were there having dinner. Dr. LoCoco ordered the children home and, although he did not speak with Mrs. LoCoco, requested that she return home to resume the marriage.
The children did return, but without their mother. Mrs. LoCoco did not go back to the matrimonial domicile until the next day, and then only to recover personal belongings. She continued living with her mother for sometime afterward before finding an apartment of her own in Kenner, Louisiana.
It is undisputed by the parties that over the course of the next two months, Dr. LoCoco made several attempts to persuade his wife to return to the marriage, finally even conducting a tour with her in the new family house in Metairie which had just completed construction. Having been again rebuffed on that occasion, Dr. LoCoco resigned himself to the fact that reconciliation was impossible and made no further attempts to achieve it.
We find that the wife’s acts constitute both constructive and actual abandonment. Once proven, the burden then shifts to the opposing party (the plaintiff in this case) to prove the alleged abandonment was done with lawful cause or adequate provocation. Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4th Cir. 1976); Farkas v. Farkas, 264 So.2d 721 (La.App. 1st Cir. 1972).
Although her brief to this court styles the week preceding the July 23,1979 separation as a “reign of terror”, and alleges numerous acts of physical violence, Mrs. LoCoco’s own trial testimony reveals that Dr. LoCoco did not at any time strike her or physically *461 abuse her during the entire year preceding the separation, these admissions coming only when pressed on cross-examination, after having testified that the defendant-husband had slapped and physically abused her. Furthermore, when called to testify in his mother’s behalf, the youngest son (who was present during the final argument of July 23) offered no corroboration whatsoever of any physical abuse by Dr. LoCoco. The defendant-husband resolutely denied having struck his wife on any night during the “reign of terror” or on any occasion during the time span to which the court had limited the testimony.[1] To the contrary, he stated that although there was some argument over the week-long denial of sexual relations, the tone was more or less moderate. This was confirmed by Mrs. LoCoco’s own testimony to that effect.
The only other allegation of cruelty on the part of Dr. LoCoco which might have provided “lawful cause” for abandonment was that the defendant subjected her to insults and humiliation in front of the children. At trial, Mrs. LoCoco complained that her husband had the habit of countermanding her orders to the children. She did succeed in proving that on one occasion Dr. LoCoco told Nazarene, their daughter, not to listen to her mother’s order to wash the dishes. But as the defendant and the daughter pointed out, Nazarene was in the midst of final exams and required all the study time she could get. Under these circumstances, Dr. LoCoco’s countermanding order was not at all unreasonable nor was it done with the arrogance and humiliation that would warrant a finding of “cruelty”.
We find that the cause for the plaintiff’s abandonment was merely her own desire to be free from the responsibilities and obligations inherent in marriage. We accept as credible Dr. LoCoco’s testimony that during the last year of the marriage, Mrs. LoCoco frequently expressed displeasure with married life itself. He stated that as they approached their silver anniversary, the plaintiff told him that she would not want to be married to anyone for twenty-five years. Josie Cazeaux, a friend of the LoCo-cos, corroborated this testimony when she revealed under oath that in May, 1979, the plaintiff, in the presence of three other women, stated that she would not be celebrating her twenty-fifth anniversary with her husband. Dr. LoCoco further testified that shortly following the de facto separation, Mrs. LoCoco admitted she was tired of being a housewife for many years, that they had married at too young an age and that she wanted to be single again.
Mrs. LoCoco claimed that marriage to Dr. LoCoco deprived her of sufficient identity. To illustrate the point, she stated her resentment of the fact that Dr. LoCoco’s new company car, a Lincoln Continental, given to her to drive and use as her own, bore a license plate with the doctor’s name, “SAN-TO”. She also objected to the fact that the family home carried the names “Dr. and Mrs. Santo LoCoco” on the mailbox.
But the greatest friction arose over Mrs. LoCoco’s desire to move to Las Vegas to establish a business of her own. The defendant-husband opposed such a move, explaining that he had a well established medical practice in New Orleans (he was, at the time, Chief of Staff at Mercy Hospital) and furthermore, that construction of the new family house in Metairie was approaching completion.
Although Mrs. LoCoco denied having any plans to conduct a business in Las Vegas, the record supports a finding that Mrs. Lo-Coco had expressed these inclinations to her husband and had the intention of carrying them out. Clara Dykes, the family maid of seven years, stated in testimony that the plaintiff had briefly discussed such plans with her. It is not disputed that during the year proceeding the separation, Mrs. LoCo-co went to Las Vegas without her husband on three occasions, and made three solo *462 trips during the five month period between the separation and the trial of this case in January, 1980. When cross-examined as to her purpose in going to Las Vegas and as to the frequency and duration of these trips, plaintiff displayed a baffling loss of memory and downright evasiveness.
We conclude that the plaintiff has totally failed to satisfy the burden of proving “lawful cause” for the constructive and actual abandonment of her spouse. While we recognize that each party was guilty of even vile verbal abuse of the other at certain times during the marriage, and that the general demeanor of each to the other was unpleasant (at best) during the last months, the Civil Code does not regard these factors in themselves as a reason to excuse an abandoning spouse. Lewis v. Lewis, 345 So.2d 1010 (La.App. 2nd Cir. 1977); Burnett v. Burnett, 324 So.2d 622 (La.App. 2nd Cir. 1975).
We are, of course, aware that since abandonment only takes place when a spouse leaves the matrimonial domicile without just cause, it is inconsistent to judge the abandoned spouse as being also “at fault”, for in that case, his fault would justify the abandonment.
We are also aware that in this case, the trial court found mutual fault of the parties.
The Louisiana Supreme Court faced the same result in Adams v. Adams, 389 So.2d 381 (La.1980), where only the wife, who was granted a separation on grounds of the husband’s abandonment, appealed because the judgment also decreed her to be at fault in causing the abandonment. It was held that “the better approach, where such an inconsistency is present, is to examine whether the record supports the finding at issue without regard to other findings not before the Court.” Adams, supra, at 382. See also Leriche v. Leriche, 303 So.2d 250 (La.App. 2nd Cir. 1974).
In the present case, as in Adams, the husband has not appealed, and therefore the question of fault on his part is not directly before this Court. The only issue which we may properly consider is whether the trial court erred in finding fault on the part of the plaintiff, Mrs. LoCoco.
For the reasons stated, we conclude that the trial court was correct in finding fault on the part of the plaintiff, the fault consisting of the wife’s abandonment of her spouse without lawful cause.
The judgment is therefore affirmed.
AFFIRMED.

. Rather than become enmeshed in the myriad conflicts and cruelties which may have occurred during the course of their twenty-five year marriage, the trial court wisely limited inquiry on these points to those occurring after July 23, 1978, a year prior to the date of de facto separation.